Rose Lee Chivers **WILLIAMS, Appellant,**

v.

**PORTLAND STATE BANK, Appellee.**

No. 7569.

Court of Civil Appeals of Texas, Beaumont.

Aug. 29, 1974.

Rehearing Denied Sept. 19, 1974.

Guy P. Allison, San Antonio, for appellant.

Allen McMurrey, Bastrop, Robert L. Davis, Austin, for appellee.

STEPHENSON, Justice.

Rose Lee Chivers Williams (plaintiff) brought this action to remove a cloud upon the title to the land involved. Portland State Bank (Bank) filed a cross-action against plaintiff and Thurman Lee Williams (Williams), her former husband, to recover on a note and for foreclosure of its lien upon such land. Trial was before the court, and judgment was rendered that plaintiff take nothing and the Bank recover on its note and foreclosing its lien. Williams did not appeal.

The basic questions in the case involve construction of Sections 5.22 and 5.24 of the V.T.C.A., Family Code, as amended (1971), and are of first impression. The material part of those sections reads as follows:

"§ 5.22. *Community Property: General Rules*

"(a) During marriage, each spouse has the sole management, control, and disposition of the community property

that he or she would have owned if single, including but not limited to:

"(1) personal earnings;

"(2) revenue from separate property;

"(3) recoveries for personal injuries; and

"(4) the increase and mutations of, and the revenue from, all property subject to his or her sole management, control, and disposition.

"(b) If community property subject to the sole management, control, and disposition of one spouse is mixed or combined with community property subject to the sole management, control, and disposition of the other spouse, then the mixed or combined community property is subject to the joint management, control, and disposition of the spouses, unless the spouses provide otherwise by power of attorney in writing or other agreement.

"(c) Except as provided in Subsection (a) of this section, the community property is subject to the joint management, control, and disposition of the husband and wife, unless the spouses provide otherwise by power of attorney in writing or other agreement."

"§ 5.24. *Presumption*

"(a) During marriage, property is presumed to be subject to the sole management, control, and disposition of a spouse if it is held in his or her name, as shown by muniment, contract, deposit of funds, or other evidence of ownership, or if it is in his or her possession and is not subject to such evidence of ownership.

"(b) A third person dealing with a spouse is entitled to rely (as against the other spouse or anyone claiming from that spouse) on that spouse's authority to deal with the property if:

"(1) the property is presumed to be subject to the sole management, control, and disposition of the spouse; and

"(2) the person dealing with the spouse:

"(A) is not a party to a fraud upon the other spouse or another person; and

"(B) does not have actual or constructive notice of the spouse's lack of authority."

The record before us shows the following transpired:

(1) Plaintiff and Williams were married January 22, 1954.

(2) 77.44 acres of land, involved in this suit, were acquired as community property by deed dated April 4, 1963, in which plaintiff and Williams were named as grantees.

(3) 100 acres of land, involved in this suit, were acquired as community property by deed dated December 30, 1963, in which Williams was the sole grantee.

(4) A note in the amount of $25,000 and a deed of trust covering both tracts of land, dated June 23, 1971, were prepared to be executed by both plaintiff and Williams.

(5) Plaintiff refused to execute either of the papers, and Williams gave this information to Jeff E. Bell, Jr., president of defendant Bank.

(6) A new note and deed of trust of the same date and terms were immediately prepared for Williams to execute alone; which he did, and the loan was concluded.

(7) Plaintiff filed suit for divorce from Williams June 30, 1971.

(8) The Bank's deed of trust was filed for record July 27, 1971.

(9) Such divorce was granted November 17, 1971, and plaintiff was awarded title to the land involved in this suit, in the divorce decree. The Bank was not a party to such divorce suit.

(10) Williams did not pay the first annual installment on the note given the Bank, and plaintiff received a letter from the Bank dated July 11, 1972, informing her that notices were being posted to sell this land.

(11) This suit was filed July 25, 1972.

The trial court made findings of fact and conclusions of law, including the following: The land involved was not the homestead of plaintiff and Williams. Such land was their community property. The Bank and Williams were not a party to any fraud as to plaintiff.

■ We consider first the points of error complaining about the action of the trial court in permitting foreclosure of the deed of trust lien as to the 77.44 acre tract which was held in names of both plaintiff and Williams. We conclude that this situation is controlled by Section 5.22(c) of the Family Code which provides, in essence, that community property is subject to the joint management, control and disposition of the husband and wife except under certain circumstances which do not exist here. We construe this section to mean that Williams had no legal authority to encumber plaintiff's interest in this tract of land in both of their names.

We consider next the points of error complaining about the action of the trial court permitting foreclosure of the deed of trust lien as to the 100 acre tract of land held in Williams' name alone. Section 5.24 of the Family Code provides in part in essence that it is presumed that property held in the name of one spouse alone, is subject to the sole management, control and disposition of such spouse, and a third person dealing with that spouse is entitled to rely upon that spouse's authority to deal with the property in the absence of fraud or notice of the spouse's lack of authority. From the factual situation before us in this case, we meet the question as to whether knowledge by the president of the Bank making this loan that plaintiff had refused to execute the first note and deed of trust was notice that Williams lacked the authority to encumber plaintiff's interest in this tract of land.

There is no evidence in this record that Williams had actual authority to encumber plaintiff's interest in this land. Both testified upon this trial, and it is clear that he did not have such authority. There is also no evidence in this record that the Bank had actual specific knowledge that Williams had no authority from plaintiff to encumber her interest in this tract of land. However, this section of the Family Code does not require "knowledge" of lack of authority, but uses the term "notice." There is an excellent discussion in Flack v. First Nat. Bank of Dalhart, 148 Tex. 495, 226 S.W.2d 628 (1950), as to the different meanings of the words "knowledge" and "notice" and the fact that the two words are not synonymous. This statement is then made in that case at page 632, to-wit:

" 'Whatever puts a person on inquiry ordinarily amounts in law to notice, provided inquiry has become a duty and would lead to knowledge of the facts by the exercise of ordinary diligence and understanding. In other words, one who has knowledge of such facts as would cause a prudent man to make further inquiry, is chargeable with notice of the facts which, by use of ordinary intelligence, he would have ascertained.' "

See also, Continental Insur. Co. v. Stewart & Stevenson Serv., 306 S.W.2d 415, 422 (Tex.Civ.App., Houston, 1957, error ref. n.r.e.).

■ Applying the law of the *Flack Case,* supra, to the case before us, we hold the actual knowledge by the Bank that plaintiff had refused to sign the first note and deed of trust was sufficient as a matter of law to put the Bank on "notice" to make further inquiry as to the extent to Williams' authority to encumber plaintiff's interest in this tract of land. The use of ordinary diligence by the Bank would have revealed to the Bank that Williams had no such authority, and the presumption that he had such authority would have been rebutted.

We must still determine whether or not the execution of the note and deed of trust created a valid lien upon Williams' interest in both tracts of land. We hold that it did, and the trial court properly ordered foreclosure of such lien as to Williams' interest. A study of the pertinent sections gives us no reason to believe such a lien would be either void or voidable as to his interest.

We proceed to enter the judgment which should have been rendered by the trial court. That portion of the judgment decreeing that the Bank have and recover from Williams the sum of $25,000 with interest as provided, and for its attorney's fee and foreclosure of the deed of trust liens as to the undivided one-half interest owned by Williams is affirmed. The remaining portion of the original judgment as to the order of sale shall remain as stated. It is further order that the Bank take nothing as to plaintiff, and the cloud upon her one-half undivided interest, in both tracts of lands, is removed. The cost of this appeal shall be paid one-half by plaintiff and one-half by the Bank.

Affirmed in part and reversed and rendered in part.